In the Matter of BROOKE RUSSELL ASTOR, Also Known as BROOKE ASTOR, Also Known as BROOKE R. ASTOR, Deceased. J.P. MORGAN CHASE BANK, N.A., et al., Respondents; ANTHONY D. MARSHALL, Appellant. (Proceeding No. 1.) In the Matter of BROOKE RUSSELL ASTOR, Also Known as BROOKE ASTOR, Also Known as BROOKE R. ASTOR, Deceased. ANTHONY D. MARSHALL, Appellant; J.P. MORGAN CHASE BANK, N.A., et al., Respondents. (Proceeding No. 2.) In the Matter of BROOKE RUSSELL ASTOR, Also Known as BROOKE ASTOR, Also Known as BROOKE R. ASTOR, Deceased. PHILIP C. MARSHALL et al., Respondents; ANTHONY D. MARSHALL, Appellant. (Proceeding No. 3.) [879 NYS2d 560]—

In three probate proceedings for the probate of several purported wills of Brooke Russell Astor, also known as Brooke Astor, also known as Brooke R. Astor, Anthony D. Marshall, the decedent's son, appeals, as limited by his brief, from (1) so much of an order of the Surrogate's Court, Westchester County (Scarpino, S.), dated January 4, 2008, as denied his motion,

inter alia, to stay discovery pending resolution of a related criminal proceeding against him, and (2) so much of an order of the same court dated September 5, 2008, as denied his motion for a protective order and directed him to turn over to the court all documents responsive to the discovery demands over which he asserted any privilege, and a "privilege log" indicating the legal ground asserted for withholding each document in accordance with CPLR 3122 (b), for in camera inspection by the court to determine whether the privilege applies.

Ordered that the orders are affirmed insofar as appealed from, with one bill of costs to the respondents appearing separately and filing separate briefs.

This appeal arises out of three probate proceedings commenced after the death of Brooke Russell Astor, also known as Brooke Astor, also known as Brooke R. Astor on August 13, 2007. The appellant Anthony D. Marshall, the decedent's son, is the proponent of a purported will dated January 30, 2002, together with a first, second, and third codicil to that will. The second and third codicils are the subject of certain allegations in a criminal proceeding against Marshall and Francis X. Morrissey. Three sets of document demands were served on the appellant by the parties involved in the probate proceedings, including the Attorney General of the State of New York, the New York Public Library, Astor, Lenox, and Tilden Foundations, the Metropolitan Museum of Art, and various other charitable beneficiaries.

The appellant moved, among other things, to stay discovery in the probate proceedings pending resolution of the criminal proceeding. Upon denial of that motion, and after further discovery, the appellant moved for a protective order on the ground that compelling production of the documents would violate his Fifth Amendment privilege against self-incrimination.

"Generally, the trial court is afforded broad discretion in supervising disclosure and its determinations will not be disturbed unless that discretion has been clearly abused . . . However, the Appellate Division is vested with its own discretion and corresponding power to substitute its own discretion for that of the trial court, even in the absence of abuse" (*Those Certain Underwriters at Lloyds, London v Occidental Gems, Inc.,* 11 NY3d 843, 845 [2008] [internal quotation marks and citations omitted]; *see Andon v 302-304 Mott St. Assoc.,* 94 NY2d 740, 745 [2000]). Here, with regard to both orders appealed from, the Surrogate's Court providently exercised its discretion in denying the relief sought by the appellant.

"Although the pendency of a criminal proceeding does not

give rise to an absolute right under the United States or New York State Constitutions to a stay of a related civil proceeding . . . 'there is no question but that the court may exercise its discretion to stay proceedings in a civil action until a related criminal dispute is resolved' " (*DeSiervi v Liverzani*, 136 AD2d 527, 528 [1988], quoting *Klitzman, Klitzman & Gallagher v Krut*, 591 F Supp 258, 269-270 n 7 [1984], *affd* 744 F2d 955 [1984]). However, while courts have recognized the difficulty faced by defendants in choosing between presenting evidence in their own behalf and asserting their Fifth Amendment rights, "a court need not permit a defendant to avoid this difficulty by staying a civil action until a pending criminal prosecution has been terminated" (*Steinbrecher v Wapnick*, 24 NY2d 354, 365 [1969]; *Access Capital v DeCicco*, 302 AD2d 48, 53 [2002]; *State of New York v Carey Resources*, 97 AD2d 508, 509 [1983]). Here, although some of the subject demands are for documents that could be incriminating in connection with the relevant counts in the criminal indictment against the appellant, "that the witness may invoke the privilege against self-incrimination is not [necessarily] a basis for precluding civil discovery" (*State of New York v Carey Resources*, 97 AD2d at 509). This is especially so where, as here, the party invoking the privilege is not a defendant who, if forced to forgo production of self-incriminating evidence, would suffer the severe prejudice of being deprived of a defense (*see e.g. Britt v International Bus Servs.*, 255 AD2d 143 [1998]), but rather a petitioner in a probate proceeding. Contrary to the appellant's contentions, his constitutional privilege against self-incrimination has been sufficiently protected by the court's ruling in the order dated September 5, 2008.

"[A] blanket refusal to answer questions based upon the Fifth Amendment privilege against self-incrimination cannot be sustained absent unique circumstances, and . . . the privilege may only be asserted where there is reasonable cause to apprehend danger from a direct answer" (*Chase Manhattan Bank, Natl. Assn. v Federal Chandros*, 148 AD2d 567, 568 [1989]; *see State of New York v Carey Resources*, 97 AD2d at 509). "While the witness is generally the best judge of whether an answer may tend to be incriminating . . . when the danger of incrimination is not readily apparent, the witness may be required to establish a factual predicate" (*State of New York v Carey Resources, Inc.*, 97 AD2d at 509; *see Flushing Natl. Bank v Transamerica Ins. Co.*, 135 AD2d 486, 487 [1987]). In such a case, "in order to effectively invoke the protections of the Fifth Amendment, a party must make a particularized objection to each discovery request" (*Chase Manhattan Bank, Natl. Assn. v Federal Chandros*, 148 AD2d at 568; *see Matter of Lieb v Henry*,

99 AD2d 757, 758 [1984]; *State of New York v Carey Resources,* 97 AD2d at 509).

The Fifth Amendment privilege "protects a person only against being incriminated by his own compelled testimonial communications" (*United States v Doe,* 465 US 605, 611 [1984] [internal quotation marks omitted]; *see Fisher v United States,* 425 US 391, 408 [1976]). Because it is undisputed that the appellant was not compelled to create the documents at issue here, his Fifth Amendment privilege against self-incrimination "would not be violated by the fact alone that the [documents] on their face might incriminate [him]" (*United States v Doe,* 465 US at 611 [internal quotation marks omitted]; *see Fisher v United States,* 425 US at 409). Instead, the appellant must show that the very act of producing the documents, if compelled by the court, would "have testimonial aspects and an incriminating effect" (*United States v Doe,* 465 US at 612; *see Fisher v United States,* 425 US at 410-411). The act of production of documents may be testimonial in that it establishes "the existence, authenticity, and custody of items that are produced" (*United States v Hubbell,* 530 US 27, 40-41 [2000]).

Here, since it is not readily apparent whether production of the documents in question would be testimonial or have an incriminating effect, the proper procedure is precisely what the Surrogate ordered in this case: that the party seeking to protect documents from disclosure "establish a factual predicate" (*State of New York v Carey Resources,* 97 AD2d at 509; *see Flushing Natl. Bank v Transamerica Ins. Co.,* 135 AD2d at 488) by "compil[ing] a privilege log in order to aid the court in its assessment of a privilege claim and enable it to undertake in camera review" (*Matter of Subpoena Duces Tecum to Jane Doe,* 99 NY2d 434, 442 [2003]; *see Matter of Lieb v Henry,* 99 AD2d at 758). Mastro, J.P., Balkin, Dickerson and Belen, JJ., concur.