Egan Jr., J.
Appeal from an order of the Supreme Court (Krogmann, J.), entered October 11, 2012 in Warren County, which, among other things, denied defendant Vicki K. Olsen’s motion to vacate a default judgment entered against her.
In April 2008, plaintiff commenced this foreclosure action against, among others, defendant Vicki K. Olsen (hereinafter defendant), alleging that defendant failed to make the necessary payments on the mortgaged property, which was located in the Town of Thurman, Warren County. As defendant then was residing in Columbia, South Carolina, plaintiff retained a litigation services company to effectuate service, and the process server dispatched to perform that task, Clarence Portee, subsequently filed an affidavit of service attesting to personal service upon defendant on April 21, 2008.[1] Defendant thereafter failed to answer or appear and, in August 2008, Supreme Court entered a judgment of foreclosure and sale against her, which plaintiff, in turn, mailed to defendant at her South Carolina address in September 2008. The mortgaged premises were sold to a third party in October 2008.
Defendant thereafter moved to vacate the judgment of foreclosure and, in conjunction therewith, sought a traverse hearing on the threshold issue of service. Following a hearing, at which Portee appeared and testified, Supreme Court concluded that personal service was effectuated upon defendant in accordance with CPLR 308 (1) and denied defendant’s motion to vacate the default judgment. This appeal by defendant ensued.
Defendant primarily contends that plaintiff failed to comply with the service requirements of CPLR 308 (1) and, therefore, her motion to vacate should have been granted. We disagree. Portee’s affidavit of service constituted prima facie evidence that defendant was properly served with process in accordance with CPLR 308 (1) (see Citimortgage, Inc. v Bustamante, 107 AD3d 752, 753 [2013]; Bank of N.Y. v Samuels, 107 AD3d 653, 653 [2013]; Kurlander v Willie, 45 AD3d 1006, 1007 [2007]). Although defendant’s sworn denials were sufficiently detailed to trigger a traverse hearing (see Emigrant Mtge. Co., Inc. v Westervelt, 105 AD3d 896, 897 [2013], lv dismissed 22 NY3d 947 *1171 [2013]; Kopman v Blue Ridge Ins. Co., 296 AD2d 479, 480 [2002]), we nonetheless are satisfied — based upon our review of the hearing testimony — that plaintiff proved by a preponderance of the evidence that personal jurisdiction was acquired over defendant (see Emigrant Mtge. Co., Inc. v Westervelt, 105 AD3d at 897; Gottesman v Friedman, 90 AD3d 608, 609 [2011], lv dismissed 19 NY3d 897 [2012]).
Portee testified that on the day in question, he went to the address he had been given for defendant (751 Mallet Hill Road, Apartment 3106) and twice attempted service. On his first attempt, Portee could hear dogs barking inside of the apartment, but no one answered the door. When Portee knocked on the door of apartment 3106 a few hours later, he again could hear dogs barking inside; when the door opened, Portee caught a glimpse of a tall man whom, he surmised, was holding back the dogs.[2] Portee testified that when he addressed the woman who opened the door as “Vicki” and/or “Miss Olsen,” the woman did not correct him; rather, she asked only how he had gained access to the gated community where she resided and inquired as to the source of the documents he was bearing. Portee proceeded to effectuate service and completed his affidavit of service within minutes of leaving the premises.[3]
Although Portee admittedly did not include the relevant apartment number on his affidavit of service, he testified that there was “[n]o question in [his] mind” that he served the papers to the woman who answered the door of apartment 3106. In this regard, although Portee indeed miscalculated defendant’s actual weight, he testified that defendant only opened the apartment door far enough to peek around the edge of it. As he could only see defendant’s face and one arm, Portee estimated defendant’s overall weight, stating that he gave the best description that he could “[w]ith all that [he] had to work with.” Finally, although defendant denied being served, she testified that no one other than her boyfriend would have been present in the apartment on the day in question and, notably, could not identify who Portee accurately described as the approximately five feet, five inches tall, 65-year-old woman served with process at that location (cf. Wright v Denard, 111 AD3d 1330, 1331 *1172 [2013]).[4] Under these circumstances, we are satisfied that defendant was personally served in compliance with CPLR 308 (1). Defendant’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Rose, J.E, McCarthy and Spain, JJ., concur. Ordered that the order is affirmed, with costs.

. The record also contains an affidavit of mailing attesting to the fact that, consistent with the requirements of CPLR 3215 (g) (3) (i), an additional copy of the summons was mailed to defendant in South Carolina in May 2008.

. Defendant was five feet, six inches tall and 63 years old in April 2008.

. Defendant acknowledged that she owned two dogs at this time and described her boyfriend — with whom she resided — as tall in stature.

. Portee also testified that he observed a vehicle bearing military stickers parked in the driveway of apartment 3106, and defendant testified that her boyfriend, who had served in the United States Marine Corp, had placed certain military decals on one of the vehicles garaged at their residence.