*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 21, 2016                    520681
_____

CARVER FEDERAL SAVINGS BANK,
                    Respondent,
        v                                MEMORANDUM AND ORDER

SHAKER GARDENS, INC., et al.,
                    Appellants,
                    et al.,
                    Defendants.
_____


Calendar Date:  November 16, 2015

Before:  McCarthy, J.P., Egan Jr., Rose, Lynch and Clark, JJ.

_____


        Kalter Kaplan Zieger & Forman, Woodbourne (Terry S. Forman of counsel), for appellants.

        Jaspan Schlesinger, LLP, Garden City (Scott B. Fisher of counsel), for respondent.

_____


Egan Jr., J.

        Appeals (1) from an amended order of the Supreme Court (Cahill, J.), entered June 21, 2013 in Sullivan County, which, among other things, granted plaintiff's motion for a deficiency judgment, and (2) from the judgment entered thereon.

        In October 2009, plaintiff commenced this mortgage foreclosure action against, among others, defendant Shaker Gardens, Inc. and Shaker Gardens' president, defendant Yehuda Nelkenbaum, the latter of whom had executed a personal guaranty in conjunction with the underlying transaction.  In December 2010, Supreme Court (Sackett, J.) issued a judgment of foreclosure and sale and appointed a referee; plaintiff

thereafter purchased the property at a public auction in November 2011 for $4 million, leaving a deficiency of more than $5 million.

Plaintiff subsequently moved to confirm the report of sale and for leave to enter a deficiency judgment and, to that end, enlisted a process server to effectuate service upon Nelkenbaum. According to plaintiff, Nelkenbaum twice was served with a copy of the subject motion – once in a hallway of the US Bankruptcy Court for the Eastern District of New York – located at 271 Cadman Plaza East in Brooklyn – in January 2012 and again approximately one month later in front of a residence in Brooklyn. Neither Shaker Gardens nor Nelkenbaum submitted papers in opposition to plaintiff's motion but, following the return date thereof, Nelkenbaum moved by order to show cause seeking a determination that he was not personally served. Supreme Court (Cahill, J.) then conducted a traverse hearing,[1] at which Nelkenbaum elected not to testify. By amended order entered June 21, 2013, Supreme Court found that service of process upon Nelkenbaum was valid and thereafter entered judgment against, among others, Shaker Gardens, Nelkenbaum and defendant Shaker Heights Apartments (hereinafter collectively referred to as defendants) for approximately $3 million. Defendants now appeal.

We affirm. A party seeking a deficiency judgment may, "[s]imultaneously with the making of a motion for an order confirming the sale, . . . make a motion . . . for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in the action. Such notice shall be served personally or in such other manner as the court may direct" (RPAPL 1371 [2]; see CPLR 308 [1]; D'Ambra v Haynor, 293 AD2d 858, 859 [2002]). "If a defendant resists service of process, service may be effected pursuant to CPLR 308 (1) by leaving a copy of the summons in the defendant's general vicinity, provided that the

---

[1] Where a sworn denial of service is sufficient to raise a question of fact as to the content or veracity of an affidavit of service, a traverse hearing is required (see Finkelstein Newman Ferrara LLP v Manning, 67 AD3d 538, 538-539 [2009]).

defendant is made aware that this is being done" (Hall v Wong, 119 AD3d 897, 897 [2014]; see Bossuk v Steinberg, 58 NY2d 916, 918 [1983]; Personnel Sys. Intl. v Clifford R. Gray, Inc., 146 AD2d 831, 832 [1989]). As a general proposition, "a process server's affidavit of service establishes a prima facie case as to the method of service and, therefore, gives rise to a presumption of proper service" (Caci v State of New York, 107 AD3d 1121, 1123 [2013] [internal quotation marks and citations omitted]; accord Emigrant Mtge. Co., Inc. v Westervelt, 105 AD3d 896, 897 [2013], lv dismissed 22 NY3d 947 [2013]; see Kurlander v Willie, 45 AD3d 1006, 1007 [2007]). Although a vague and unsupported denial of service is "insufficient to dispute the veracity or content of the [process] server's affidavit" (Owens v Freeman, 65 AD3d 731, 733 [2009], lv dismissed 13 NY3d 855 [2009]; see Kurlander v Willie, 45 AD3d at 1007), "where there is a sworn denial that a defendant was served with process, the affidavit of service is rebutted, and the plaintiff must establish jurisdiction at a hearing by a preponderance of the evidence" (Wells Fargo Bank, NA v Chaplin, 65 AD3d 588, 589 [2009]; accord Caci v State of New York, 107 AD3d at 1123; Emigrant Mtge. Co., Inc. v Westervelt, 105 AD3d at 897). Upon reviewing the record before us, and according due deference to Supreme Court's credibility assessments (see Caci v State of New York, 107 AD3d at 1124; Matter of DeMeo v City of Albany, 63 AD3d 1272, 1272 [2009]), we are satisfied that plaintiff met that burden here.

During the course of the traverse hearing, the process server, Robert Urena, testified that he first attempted to serve Nelkenbaum following a court proceeding in January 2012. Urena waited in the hallway and, when the individual he believed to be Nelkenbaum exited the courtroom with an attorney, Urena approached the man and asked if he was Nelkenbaum. When the man refused to answer, Urena informed him that he had legal papers for him; when this individual did not accept the papers, Urena told the man that he was going to leave the papers and "dropped them at his feet." Urena thereafter completed an affidavit of service, wherein he described the individual served as a white male with black hair, glasses and a beard, approximately 45 to 55 years old, 5 feet 8 inches tall and weighing 190 to 200 pounds. A second attempt at service was made in February 2012 at a

residence located at 970 East 18th Street in Brooklyn, at which time Urena observed "the same individual as in the courthouse . . . coming out [of the residence] with a bicycle." Urena approached the man, asked if he was Nelkenbaum and, after receiving no response, informed the individual that he "had legal papers for . . . Yehuda Nelkenbaum." When the man did not accept the papers, Urena again informed him that he would be leaving the papers and dropped them at the man's feet. Urena thereafter completed an affidavit of service, describing the individual served as a white male with brown hair, a mustache and a beard, approximately 40 to 50 years old, 5 feet 9 inches tall and weighing 190 to 200 pounds.

Contrary to defendants' assertions, the physical descriptions contained in the respective affidavits of service are substantially similar to one another and, further, parallel the physical description given by Urena – from memory at the traverse hearing – of the individual served on the dates in question. To the extent that defendants argue that there is insufficient proof that Urena served Yehuda Nelkenbaum (as opposed to a relative thereof), Urena plainly testified that – at least with respect to the February 2012 attempt at service – he informed the individual that he had legal papers for "Yehuda Nelkenbaum," and nothing in the record suggests that this individual made any attempt to correct Urena on this point (see TD Banknorth, N.A. v Olsen, 112 AD3d 1169, 1171 [2013]). Further, the record reflects that although Nelkenbaum was in the vicinity of the courthouse at the time of the traverse hearing, he elected not to testify, thereby permitting Supreme Court "to draw the strongest possible inference against him that the evidence would allow" (Matter of Emmett RR. [Scott RR.], ___ AD3d ___, ___, 2015 NY Slip Op 08883, *2 [2015]; see Matter of Adam K. v Iverson, 110 AD3d 168, 178 [2013]; Stein v McDowell, 74 AD3d 1323, 1325 [2010]). Finally, to the extent that Nelkenbaum's driver testified that, following the January 2012 court proceeding and while Nelkenbaum was in the bathroom, "[s]omebody dropped something at me, mumbled something and walked away," thereby implying that Urena served the driver instead of Nelkenbaum, we defer to Supreme Court's credibility assessment of this witness – particularly in view of the fact that the physical description of Nelkenbaum's driver did not match the physical

description of the individual set forth in Urena's January 2012 affidavit of service.  In short, we are satisfied that plaintiff established — by a preponderance of the credible evidence — that Nelkenbaum was personally served in compliance with CPLR 308 (1). Defendants' remaining contentions are either unpreserved for our review or lacking in merit.

McCarthy, J.P., Rose, Lynch and Clark, JJ., concur.


ORDERED that the amended order and judgment are affirmed, with costs.


ENTER:

Robert D. Mayberger
Clerk of the Court