Carver Fed. Sav. Bank v Shaker Gardens, Inc. (2018 NY Slip Op 08975)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Carver Fed. Sav. Bank v Shaker Gardens, Inc.

2018 NY Slip Op 08975

Decided on December 27, 2018

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 27, 2018

525126

[*1]CARVER FEDERAL SAVINGS BANK, Appellant,
vSHAKER GARDENS, INC., et al., Defendants, and YEHUDA NELKENBAUM, Respondent. CHAVA NELKENBAUM, Respondent.

Calendar Date: October 16, 2018
Before: Garry, P.J., Egan Jr., Clark, Mulvey and Rumsey, JJ.


Jaspan Schlesinger LLP, Garden City (Scott B. Fisher of counsel), for appellant.
Gerald B. Lefcourt, PC, New York City (Gerald B. Lefourt of counsel), for Yehuda Nelkenbaum, respondent.
Robert C. Hiltzik, Jericho, for Chava Nelkenbaum, respondent.

MEMORANDUM AND ORDER
Mulvey, J.
Appeals (1) from an order of the Supreme Court (Schick, J.), entered May 27, 2016 in Sullivan County, which, among other things, denied plaintiff's motion to hold defendant Yehuda Nelkenbaum in contempt, and (2) from an order of said court, entered August 2, 2017 in Sullivan County, which denied plaintiff's motion to compel Chava Nelkenbaum to submit to a deposition and produce documents responsive to a subpoena.
In 2013, plaintiff was awarded a deficiency judgment in the amount of $3,262,667.76 against defendant Yehuda Nelkenbaum (hereinafter defendant) and others (see Carver Fed. Sav. Bank v Shaker Gardens, Inc., 135 AD3d 1212 [2016]). In an effort to enforce this judgment, plaintiff subsequently served defendant with a subpoena duces tecum requiring him to appear for a May 2014 deposition and produce certain specified documentation relevant to the satisfaction of the judgment (see CPLR 5223, 5224). Defendant never appeared or responded to the subpoena. Plaintiff then moved to compel compliance with the subpoena or, in the alternative, to hold defendant in contempt. By order entered in December 2014, Supreme Court directed defendant to appear for a deposition on January 30, 2015 and to produce responsive documents at least 10 days prior to the scheduled deposition. This order further provided that, if defendant failed to comply with its directives, "he shall be in contempt of [c]ourt." Once again, defendant failed to appear for the deposition or to produce the requested documents.
Soon thereafter, plaintiff moved to hold defendant in contempt for his failure to comply with the December 2014 order. One day prior to the return date, defendant filed a chapter 13 bankruptcy petition. As a result thereof, the proceedings in Supreme Court were stayed and the contempt motion was withdrawn without prejudice. Following the dismissal of the bankruptcy petition due to defendant's failure to appear for a creditors' meeting and to comply with mandatory disclosure, plaintiff resumed efforts to obtain an adjudication of contempt against defendant and accordingly refiled the contempt motion. Two days before the return date of this motion, defendant appeared by prior arrangement at the office of his counsel for a deposition. Defendant was sworn in and stated his name for the record, but refused to answer any further questions propounded to him regarding his income, assets or debts and produced none of the documents requested, invoking his privilege against self-incrimination under the Fifth Amendment of the US Constitution and article 1, § 6 of the NY Constitution.
In July 2015, a hearing was held on the contempt motion during which Supreme Court conducted an ex parte, in camera conference with defendant's counsel to address the basis for defendant's invocation of his Fifth Amendment right. In that conference, Supreme Court accepted a letter from defendant's counsel setting forth arguments in support of defendant's invocation and entertained counsel's oral elaboration of those points. Following the conference and upon further submissions from the parties, Supreme Court denied plaintiff's motion for an order of contempt, finding that defendant was entitled to assert his constitutional privilege against self-incrimination in response to each question presented at his deposition and as a basis for not producing the documents responsive to the subpoena.
Approximately three months later, Chava Nelkenbaum, defendant's wife, was served with a similar subpoena requiring her appearance at a scheduled deposition and the production of documentation relevant to the satisfaction of the judgment. Chava Nelkenbaum ultimately appeared for a deposition and, after stating her name and acknowledging her marriage to defendant, asserted the Fifth Amendment privilege and/or the spousal privilege under CPLR 4502 (b) as the basis for her refusal to answer any further questions. Supreme Court denied plaintiff's motion to compel on the same ground that it denied plaintiff's prior motion to hold defendant in contempt. Plaintiff now appeals from the denial of both motions.
"To sustain a civil contempt finding based upon the violation of a court order, it must be established that there was a lawful court order in effect that clearly expressed an unequivocal mandate, that the person who allegedly violated the order had actual knowledge of its terms, and that his or her actions or failure to act defeated, impaired, impeded or prejudiced a right of the moving party" (Howe v Howe, 132 AD3d 1088, 1089 [2015] [internal quotations marks and citations omitted]; see Judiciary Law § 753 [3]; El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]). It is undisputed that defendant failed to comply with the December 2014 order directing him to appear for the deposition scheduled for January 30, 2015 and to produce the documents requested in the subpoena, that he was in receipt of such order and that he had knowledge of its terms. Plaintiff's counsel asserted, without contradiction, that plaintiff's right to enforce the judgment was impaired, impeded and/or prejudiced by defendant's failure to comply with the order, as it had been unable to locate assets available to enforce the underlying judgment. Further, defendant has never furnished an affidavit addressing his failure to appear for the deposition or to otherwise comply with the December 2014 order. Thus, a finding of civil contempt was amply justified on this record. That said, "a contemnor will be allowed to purge the contempt by performing the act required, or by undoing the act constituting the contempt" (Matter of January 1979 Grand Jury of Albany Supreme Ct. v Doe, 84 AD2d 588, 588 [1981]; see Matter of Pronti v Allen, 13 AD3d 1034, 1036 [2004]; Matter of Silverstein v Aldrich, 76 AD2d 911, 912 [1980]; Matter of Ferrara v Hynes, 63 AD2d 675, 675 [1978]). Here, defendant did ultimately appear for a deposition and testify as ordered, albeit belatedly. The question thus distills to whether defendant's invocation of the Fifth Amendment privilege against self-incrimination in response to each of the questions presented, and his assertion of the privilege as a basis for withholding disclosure of the documents demanded in the subpoena, served to purge himself of the contempt.
It is settled that "a party may not be held in contempt based upon his or her good faith invocation of the Fifth Amendment privilege against self-incrimination" (Matter of County of Orange v Rodriguez, 283 AD2d 494, 495 [2001]; see United States v Rylander, 460 US 752, 760-761 [1983]; El-Dehdan v El-Dehdan, 114 AD3d 4, 21 [2013], affd 26 NY3d 19 [2015]). The Fifth Amendment privilege against self-incrimination, which "can be asserted in any proceeding, civil or criminal, . . . protects against any disclosures which the [individual] reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used" (Kastigar v United States, 406 US 441, 444-445 [1972]; see Lefkowitz v Turley, 414 US 70, 77 [1973]; People v Cantave, 21 NY3d 374, 379 [2013]). However, "this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. The witness is not exonerated from answering merely because [the witness] declares that in so doing he [or she] would incriminate himself [or herself]" (Hoffman v United States, 341 US 479, 486 [1951] [internal citation omitted]; accord Ohio v Reiner, 532 US 17, 21 [2001]; see Zicarelli v New Jersey State Comm. of Investigation, 406 US 472, 478 [1972]; State of New York v Carey Resources, 97 AD2d 508, 509 [1983]). Stated differently, a witness may validly claim the privilege only where it is shown that the hazards of incrimination are "substantial and real, and not merely trifling or imaginary" (Marchetti v United States, 390 US 39, 53 [1968] [internal quotation marks and citation omitted]; see Ohio v Reiner, 532 US at 21; Zicarelli v New Jersey State Comm. of Investigation, 406 US at 478). Determining whether the privilege is applicable thus involves a factual inquiry in which the court must determine, "from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result" (Hoffman v United States, 341 US at 486-487; accord Ohio v Reiner, 532 US at 21).
Preliminarily, we agree with plaintiff that the subpoenaed tax forms — that is, defendant's income tax returns, W-2 wage statements and 1099 forms — fall within the "required records exception" to the privilege against self-incrimination. Under this exception, "[t]he Fifth Amendment privilege which exists as to private papers cannot be asserted with respect to records which are required, by law, to be kept and which are subject to governmental regulation and inspection" (People v Doe, 59 NY2d 655, 656 [1985]; see Shapiro v United States, 335 US 1, 33 [1948]; Matter of Grand Jury Subpoena Duces Tecum Dated Dec. 14, 1984, 69 NY2d 232, 242 [1987], cert denied 482 US 982 [1987]). "To constitute 'required records,' the documents must satisfy a three-part test: (1) the requirement that they be kept must be essentially regulatory, (2) the records must be of a kind which the regulated party has customarily kept, and (3) the records themselves must have assumed 'public aspects' which render them analogous to public documents" (Doe v United States, 711 F2d 1187, 1191 [2d Cir 1983]; see Grosso v United States, 390 US 62, 67-68 [1968]). Tax returns, W-2 wage statements and 1099 forms have repeatedly been held to fall under this rubric (see United States v Edgerton, 734 F2d 913, 918 [2d Cir 1984]; Doe v United States, 711 F2d at 1191; Huber v Arck Credit Co., LLC, 2016 WL 482955, *6, 2016 US Dist LEXIS 14299, *19 [SD NY, Feb. 5, 2016, No. 12-CV-8175 (JMP)]; United States v Barile, 2007 WL 3534261, *3, 2007 US Dist LEXIS 84393, *8 [ND NY, Nov. 13, 2007, No. 1:06-MC-137 (LEK/RFT)]; AAOT Foreign Economic Assn. [VO] Technostroyexport v International Dev. & Trade Servs., Inc., 1999 WL 970402, *7-8, 1999 US Dist LEXIS 16617, *21 [SD NY, Oct. 25, 1999, No. 96 Civ. 9056 (JGK/AJP)]). Thus, defendant must produce the requested tax returns, including W-2 wage statements and 1099 forms.
With respect to the balance of the information sought, it is not evident that every answer to the 358 questions propounded during the May 2015 deposition, and every disclosure of the remaining documents requested in the subpoena, would subject defendant to a real and substantial danger of self-incrimination. The questions put to defendant were those customarily asked at a judgment debtor examination, and there is no indication that the purpose of the deposition was "anything other than an ordinary search of [defendant's] assets in order to satisfy the judgment against him" (Capitol Products Corporation v Hernon, 457 F2d 541, 543 [8th Cir 1972]; see Federal Deposit Ins. Corp. v Salesmen Unlimited Agency Corp., 101 AD2d 876, 877 [1984]; Troy v Superior Court, 186 Cal App 3d 1006, 1012 [1986]). Defendant posits that the disclosure of any assets, personal information or financial applications and records "could" [*2]implicate certain federal and state criminal statutes, including laws regarding taxation or those pertaining to the acquisition or retention of property. Yet, there is nothing in this record indicating, nor does defendant assert, that he is the subject of any criminal investigation or proceeding. More to the point, defendant has not shown that his claimed fear of prosecution is anything other than "imaginary" (Marchetti v United States, 390 US at 53) or based on something more than a "remote and speculative possibilit[y]" (Zicarelli v New Jersey State Comm. of Investigation, 406 US at 478; see Federal Deposit Ins. Corp. v Salesmen Unlimited Agency Corp., 101 AD2d at 877; Capitol Products Corporation v Hernon, 457 F2d at 543; Troy v Superior Court, 186 Cal App 3d at 1013).
Where, as here, "the danger of incrimination is not readily apparent, the witness [should] be required to establish a factual predicate" for the invocation of the privilege (State of New York v Carey Resources, 97 AD2d at 509; accord Matter of Astor, 62 AD3d 867, 869 [2009]; see Flushing Natl. Bank v Transamerica Ins. Co., 135 AD2d 486, 487 [1987]). Defendant made no such showing, instead merely making a broad, undifferentiated assertion of the Fifth Amendment privilege as to each and every question asked, as well as to all documents requested, on the basis of sweeping and unsubstantiated assertions of counsel. Such a blanket invocation of the privilege — even as to questions as innocuous as defendant's marital status and whether he has any children or owns his home — simply cannot be sustained on this record (see Chase Manhattan Bank, Natl. Assn. v Federal Chandros, 148 AD2d 567, 568 [1989] [concluding, on an application to hold a judgment debtor in contempt for failing to comply with a subpoena, that "a blanket refusal to answer questions based upon the Fifth Amendment privilege against self-incrimination cannot be sustained absent unique circumstances"]; Bank of America, N.A. v Veluchamy, 643 F3d 185, 187 [7th Cir 2011] [same]; United States v Hatchett, 862 F2d 1249, 1251 [6th Cir 1988] [same]; Capitol Products Corporation v Hernon, 457 F2d at 542-543 [same]; Huber v Arck Credit Company, LLC, 2016 WL 482955 at *5-6, 2016 US Dist LEXIS 14299 at *18-21; see also Matter of Astor, 62 AD3d at 869; State of New York v Carey Resources, 97 AD2d at 509).
Under these circumstances, "in order to effectively invoke the protections of the Fifth Amendment, [a defendant] must make a particularized objection to each discovery request" (Chase Manhattan Bank v Federal Chandros, 148 AD2d at 568; accord Matter of Astor, 62 AD3d at 869; see Matter of Lieb v Henry, 99 AD2d 757, 758 [1984]; State of New York v Carey Resources, 97 AD2d at 509; Capitol Products Corporation v Hernon, 457 F2d at 543). The proper procedure, therefore, is to remit the matter to Supreme Court "to conduct an in camera inquiry to assess the validity of the assertion of the privilege upon such particularized objections" (State of New York v Carey Resources, 97 AD2d at 509; see Matter of Astor, 62 AD3d at 869; Matter of Lieb v Henry, 99 AD2d at 758; Capitol Products Corporation v Hernon, 457 F2d at 544). With request to the subpoenaed documents, defendant must establish a "factual predicate" by submitting the documents for an in camera inspection and/or "compiling a privilege log in order to aid the court in its assessment of a privilege claim and enable it to undertake in camera review" (Matter of Astor, 62 AD3d at 869-870 [internal quotations marks, brackets and citation omitted]; see Matter of Subpoena Duces Tecum to Jane Doe, 99 NY2d 434, 442 [2003]; Ren Zheng Zheng v Bermeo, 114 AD3d 743, 745 [2014]; Matter of Lieb v Henry, 99 AD2d at 758).
For the same reasons, we conclude that Supreme Court's order denying plaintiff's motion to compel as to Chava Nelkenbaum must be reversed and the matter remitted for an in camera inquiry to test the validity of her invocation of the Fifth Amendment privilege as to each of the questions asked and each of the documents demanded of her. To the extent that Chava Nelkenbaum invoked the spousal privilege as a basis for refusing to answer certain questions propounded at the deposition or to produce documents responsive to the subpoena, we note that the privilege "attaches only to those statements made in confidence and 'that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship'" (People v Fediuk, 66 NY2d 881, 883 [1985], quoting Matter of Vanderbilt [Rosner—Hickey], 57 NY2d 66, 73 [1982]; see People v Mills, 1 NY3d 269, 276 [2003]). Further, this privilege does not attach to "ordinary conversations relating to matters of business" (Johnson v Johnson, 25 AD2d 672, 673 [1966] [internal quotation marks and citation omitted]; [*3]see People v Melski, 10 NY2d 78, 80 [1961] [spousal privilege does not attach "where the communication involved ordinary business matters"]; Parkhurst v Berdell, 110 NY 386, 394 [1888]; Securities Settlement Corp. v Johnpoll, 128 AD2d 429, 431 [1987], lv dismissed 70 NY2d 693 [1987]), nor does it apply "when the substance of [the] communication . . . is revealed to third parties" (Matter of Vanderbilt [Rosner—Hickey], 57 NY2d at 74). Supreme Court did not reach the issue of whether the spousal privilege was properly invoked by Chava Nelkenbaum, having ruled that she properly asserted her Fifth Amendment privilege in response to all inquiries put to her during her deposition and all documents demanded in the subpoena, and the record before us is insufficient to evaluate the merits of the claimed privilege.
Finally, we find no basis upon which to disturb Supreme Court's decision to seal the two letters proffered by defendant's counsel as well as the transcript of the in camera conference (see 22 NYCRR 216.1). Plaintiff's remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be lacking in merit.
Garry, P.J., Egan Jr., Clark and Rumsey, JJ., concur.
ORDERED that the order entered May 27, 2016 is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion to hold defendant Yehuda Nelkenbaum in contempt; motion granted and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.
ORDERED that the order entered August 2, 2017 is reversed, on the law, without costs, plaintiff's motion to compel granted and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.