Matter of Grinnage v New York City Tr. Auth. (2022 NY Slip Op 06523)

Matter of Grinnage v New York City Tr. Auth.

2022 NY Slip Op 06523

Decided on November 17, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 17, 2022

534112
[*1]In the Matter of the Claim of Gregory Grinnage, Respondent,
v
New York City Transit Authority, Appellant. Workers' Compensation Board, Respondent.

Calendar Date:October 19, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Weiss, Wexler & Wornow, PC, New York City (J. Evan Perigoe of counsel), for appellant.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for Workers' Compensation Board, respondent.

Clark, J.
Appeals (1) from a decision of the Workers' Compensation Board, filed March 22, 2021, which ruled, among other things, that claimant sustained a causally-related occupational disease, and (2) from a decision of said Board, filed December 3, 2021, which denied the employer's application for reconsideration and/or full Board review.
Claimant worked as a bus driver for the self-insured employer for 31 years. On March 17, 2020, claimant sought treatment from Gideon Hedrych, a trauma and emergency medicine physician, for pain and limitations to his wrists, hands and knees and his left hip and shoulder, detailing his work duties and the use of his hands/wrists, legs/knees, hips and shoulders to perform the tasks required to operate a bus. Claimant reported that in 2005, his left shoulder symptoms began, for which he received cortisone injections, and that he sustained a sports-related right knee injury for which he underwent arthroscopic surgery. He then began to experience intermittent pain in both knees in 2008 or 2009. His pain and symptoms worsened in 2015, but he did not seek medical treatment. Then, upon experiencing increased right knee swelling and pain in 2018, he sought treatment involving draining fluid from his knee. Claimant's symptoms persisted, and, in March 2020, Hedrych first examined claimant and reviewed his medical records. Hedrych diagnosed claimant with work-related repetitive stress injuries including bilateral knee derangement with tendinitis, bilateral wrist/hand derangement with tendinitis, left shoulder and hip derangement with tendinitis, and three types of neuropathy including brachial plexopathy, and he memorialized such findings in a report dated March 17, 2020.
Claimant thereafter filed a claim for workers' compensation benefits asserting that his conditions were causally-related to the repetitive stress of his job duties; the employer controverted the claim. After a hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) found that claimant had submitted prima facie medical evidence to support his claim based upon Hedrych's March 2020 report; the WCLJ directed claimant to produce his prior treatment records and directed the employer to produce an independent medical examination (hereinafter IME) within 90 days. Hedrych testified to his examination of claimant and the results of MRI tests to claimant's knees, left shoulder and wrists, and confirmed that he had memorialized his findings in the March 2020 report. Hedrych confirmed claimant's diagnoses and explained that claimant suffered from three types of peripheral neuropathies, including carpel tunnel syndrome in both wrists and brachial plexopathy in the left shoulder/arm, each of which he attributed to repetitive stress from claimant's specific work duties and movements as a bus driver for three decades. Claimant testified, detailing his work activities and symptoms, to which he attributed each medical condition.
During summations at the end of the hearing[*2], the employer requested additional time to produce an IME; the WCLJ denied the request. Although finding claimant to be credible, the WCLJ found that Hedrych was not fully aware of claimant's prior treatment history and did not review all of his medical records, some of which had not been produced. Thus, the WCLJ held that there was insufficient evidence to establish a causal link between claimant's work and his injuries and disallowed his claim. Upon administrative appeal, the Workers' Compensation Board reversed the decision of the WCLJ, finding that claimant had submitted sufficient, uncontradicted evidence to establish a recognizable link between his conditions and the repetitive nature of his job; the Board established the claim for causally-related injuries to claimant's left shoulder, left wrist and carpel tunnel syndrome, left thumb and hip and bilateral knees. The employer then applied for reconsideration and/or full Board review, which the Board denied. The employer appeals from both decisions.
We affirm. An occupational disease is "a disease resulting from the nature of [the] employment and contracted therein" (Workers' Compensation Law § 2 [15]), and "does not derive from a specific condition peculiar to an employee's place of work, nor from an environmental condition specific to the place of work" (Matter of Brancato v New York City Tr. Auth., 206 AD3d 1418, 1418 [3d Dept 2022] [internal quotation marks and citations omitted]). "To be entitled to workers' compensation benefits for an occupational disease, a claimant must establish a recognizable link between his or her condition and a distinctive feature of his or her occupation through the submission of competent medical evidence" (Matter of Sanchez v New York City Tr. Auth., 206 AD3d 1428, 1429 [3d Dept 2022] [internal quotation marks and citations omitted]). "Importantly, the Board's decision as to whether to classify a certain medical condition as an occupational disease is a factual determination that will not be disturbed if supported by substantial evidence" (Matter of Patalan v PAL Envtl., 202 AD3d 1252, 1253 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Molina v Delta Airlines Inc., 201 AD3d 1193, 1194 [3d Dept 2022]).
The unrefuted medical testimony provided by Hedrych established that claimant's left thumb, wrist and carpal tunnel syndrome injuries, as well as his left hip and shoulder and bilateral knee injuries, were causally related to the distinctive nature of his employment activities.[FN1] To that end, Hedrych recounted claimant's specific job activities over his three-decade career as a bus driver — as described by claimant and consistent with his testimony — and explained his medical findings and the specific bases for his conclusion that each condition was caused by the repetitive stress required by claimant's work activities. For example, Hedrych explained that cumulative trauma to the wrists caused by their frequent use in different [*3]positions and gripping the steering wheel all day with the force required to operate a bus contributed to claimant's carpel tunnel syndrome. In light of the foregoing uncontroverted evidence that repetitive actions were a distinctive feature of claimant's job duties and the medical evidence of a recognizable causal link between his conditions/diagnoses and distinctive features of his work, substantial evidence supports the Board's factual determination that his medical conditions constitute an occupational disease (see Matter of Molina v Delta Airlines Inc., 201 AD3d at 1194; Matter of DiGennaro v Greece Cent. Sch. Dist., 184 AD3d 917, 918-919 [3d Dept 2020]; compare Matter of Patalan v PAL Envtl., 202 AD3d at 1253; Matter of Barker v New York City Police Dept., 176 AD3d 1271, 1272-1273 [3d Dept 2019], lv denied 35 NY3d 902 [2020]).
To the extent the employer argues that the Board's decision must be reversed because the Board, at one point in its factual summary, misstated the reasons that the WCLJ disallowed the claim, we disagree. The WCLJ concluded that Hedrych was not fully aware of claimant's "prior treatment" in that he had not reviewed all of his prior medical treatment records, whereas the Board's factual summary stated that the WCLJ had found that Hedrych was not aware of claimant's "prior treatment for a neck and back condition." Although the Board appears to have misstated to which prior records the WCLJ was referring, the Board clearly concluded that, based on the uncontradicted evidence — including Hedrych's medical examination and testimony and claimant's testimony — claimant had established the requisite recognizable causal link between his condition and the nature of his job.
With regard to the employer's contention that it should have been granted an extension of time to procure an IME, we are not persuaded. Although the WCLJ directed the employer to procure an IME within 90 days of July 2, 2020, it failed to do so or to request an extension during that time period. The employer first, belatedly, asked for further time to schedule an IME after the close of proof at the final hearing on November 16, 2020, during its summation. Contrary to the employer's claim, it had Hedrych's records and could have either timely requested an extension of time or produced an IME based upon the available records, with an option to amend the IME report upon obtaining outstanding medical records.[FN2] Under these circumstances, we discern no basis upon which to disturb the denial of the employer's untimely request.
Finally, the employer argues that the Board erred in denying its application for full Board review and/or reconsideration. The application was premised upon the employer's claim that it "never received" claimant's administrative appeal (form RB-89) of the WCLJ's decision to the Board and, as a result, it did not have an opportunity to file a rebuttal thereto (see 12 NYCRR 300.13 [c]). However, claimant's application for administrative review[*4](form RB-89) included an attorney affirmation of service attesting that it was served by mail on the employer on December 21, 2020, to the attention of Robert Feldman at the employer's Brooklyn address (see 12 NYCRR 300.13 [b] [2] [iv]). In applying for full Board review and/or reconsideration, the employer did not dispute that this was a correct address or that other "necessary parties of interest" were not served (12 NYCRR 300.13 [a] [4]; [b] [2] [iv]). Instead, the employer's attorney submitted an affirmation stating that he had spoken to the employer's agency attorney, "who has confirmed that [the employer] ha[d] personnel working at [that address] to receive and deliver all workers' compensation appeals to [the employer's] agency counsel," and that the employer "did not receive a copy of [claimant's] application in the mail." Neither Feldman nor the named agency attorney submitted sworn affidavits to rebut the proof of service (see Doller v Prescott, 167 AD3d 1298, 1302 [3d Dept 2018]; compare Carver Fed. Sav. Bank v Shaker Gardens, Inc., 135 AD3d 1212, 1213-1214 [3d Dept 2016]). "To succeed on an application for reconsideration and/or full Board review, the applicant must demonstrate that newly discovered evidence exists, that there has been a material change in condition, or that the Board improperly failed to consider the issues raised in the application for review in making its initial determination" (Matter of Osorio v TVI Inc., 193 AD3d 1219, 1222 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). The employer made no such showing and, more to the point, did not establish that there were defects in claimant's proof of service (see Workers' Compensation Law § 23; 12 NYCRR 300.13 [b] [2] [iv]). Under these circumstances, we find no basis upon which to conclude that the Board abused its discretion or acted in an arbitrary and capricious manner in denying the employer's application for reconsideration and/or full Board review given claimant's compliance with the proof of service requirements (see 12 NYCRR 300.13 [a] [2]; Matter of Torres v C & S Wholesale, 202 AD3d 1177, 1178 [3d Dept 2022]; Matter of Levine v Health First [HF Mgt. Servs. LLC], 147 AD3d 1193, 1194-1195 [3d Dept 2017]). The employer's remaining contentions, to the extent not discussed herein, have been rejected.
Egan Jr., J.P., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decisions are affirmed, without costs.

Footnotes

Footnote 1: The employer failed to obtain an IME as directed or to timely request an extension of time in which to do so.

Footnote 2: It is undisputed that claimant signed a release to allow the employer to obtain the records. The employer's new argument that claimant prevented the employer from procuring some of his records was not raised at the hearing.