Matter of Morgan v Kinray, Inc. (2024 NY Slip Op 02241)

Matter of Morgan v Kinray, Inc.

2024 NY Slip Op 02241

Decided on April 25, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 25, 2024

CV-23-0563
[*1]In the Matter of the Claim of Dexter Morgan, Appellant,
v
Kinray, Inc., et al., Respondents. Worker's Compensation Board, Respondent.

Calendar Date:March 28, 2024

Before:Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ.

Pellegrini & Associates, LLC, New York City (John F. Clennan, Ronkonkoma, of counsel), for appellant.
Goldberg Segalla, Rochester (Bradford J. Reid of counsel), for Kinray, Inc. and others, respondents.

Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed March 9, 2023, which ruled, among other things, that claimant did not sustain a causally-related occupational disease and disallowed his claim for workers' compensation benefits.
Claimant, a warehouse associate, filed a claim for workers' compensation benefits alleging that he suffered an occupational disease to his neck, back, shoulders, hands, hips, knees and ankles. Claimant alleged that his injuries and conditions were the result of repetitive motions and use of his arms, hands, legs, neck and back while engaged in heavy lifting, reaching, scanning and squatting as he picked up items from shelves to complete orders. Claimant alleged that the onset was January 1, 2021, after he reached for a bottle of shampoo. The next day, he sought treatment for hand and wrist pain, indicating that the onset of his pain had been two weeks prior. Claimant stopped working in October 2021 due to his hand and joint pain. Claimant did not again seek related medical treatment until November 2021, when he began treating with a physiatrist, who primarily focused on his neck and back pain and referred him to an orthopedic surgeon, who treated him for multiple conditions; both concluded in their reports and later testimony that, as to certain conditions, he had causally-related occupational disease and was temporarily totally disabled. Claimant's treating orthopedist concluded that his hand pain was causally-related to his work and his physiatrist found a causal relationship as to his neck and back conditions and multiple joint pain. A December 2021 spinal MRI showed herniated and bulging discs and impingements in the cervical and lumbar spine, which claimant's orthopedist testified was possibly due to repetitive stress at work and his physiatrist testified could be degenerative or due to overuse.
Claimant was examined in February 2022 by an orthopedic surgeon retained by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) who found no evidence of a causally-related neck, back or wrist condition and no objective findings of disease or injury, and concluded that claimant had voluntarily limited his range of motion and exaggerated his symptoms during the exam. The carrier's consulting surgeon found no relationship between claimant's reported pain and symptoms and his occupational exposure and job duties, attributed his condition to normal aging, found no causally-related disability and opined that the MRI findings did not explain his symptoms or the limitations exhibited during the exam.
At the hearing, claimant testified to his symptoms and job duties, which required bending, stooping, reaching and lifting heavy objects weighing up to 50 pounds, and that he had told his treating and the IME physicians about the January 2021 incident. A Workers' Compensation Law Judge (hereinafter WCLJ), crediting the testimony of claimant's treating physicians, established [*2]the claim for an occupational disease involving the back and neck (lumbar and cervical) and bilateral wrists/hands.[FN1] The WCLJ declined to credit the contrary opinion of the carrier's orthopedic consultant, finding that he had been unaware of the hours claimant worked daily or how often he was required to lift heavy items. The Workers' Compensation Board reversed the WCLJ's decision and disallowed the claim for workers' compensation benefits, finding, among other things, that the medical opinions of claimant's treating providers were insufficient to demonstrate the necessary causal link between his conditions and his job duties, in that they had limited knowledge of his specific job duties. Claimant appeals.
We affirm. An occupational disease is "a disease resulting from the nature of [the] employment and contracted therein" (Workers' Compensation Law § 2 [15]) and "does not derive from a specific condition peculiar to an employee's place of work, nor from an environmental condition specific to the place of work" (Matter of Patalan v PAL Envtl., 202 AD3d 1252, 1252-1253 [3d Dept 2022] [internal quotation marks and citations omitted]; accord Matter of Grinnage v New York City Tr. Auth., 210 AD3d 1251, 1253 [3d Dept 2022]). "To establish an occupational disease, the claimant must demonstrate a recognizable link between his or her condition and a distinctive feature of his or her employment, and the Board's decision as to whether to classify a certain medical condition as an occupational disease is a factual determination that will not be disturbed if supported by substantial evidence" (Matter of Sanchez v New York City Tr. Auth., 213 AD3d 1131, 1132 [3d Dept 2023] [internal quotation marks, ellipsis, brackets and citations omitted]), "even where there is record evidence that could support a contrary result" (Matter of Freyta v Calvin Maintenance Inc., 220 AD3d 1036, 1038 [3d Dept 2023]). To that end, "the Board is vested with the discretion to resolve conflicting medical opinions and, in doing so, it may accept or reject those opinions in whole or in part" (Matter of Seymour v American Stock Transfer & Trust Co., 205 AD3d 1271, 1272 [3d Dept 2022] [internal quotation marks and citations omitted]).
A review of the record supports the Board's determination that claimant failed to proffer sufficient, credible medical evidence to establish a causal relationship between his neck, back and hand/wrist conditions and a distinctive feature of his employment. Although claimant testified in some detail to his job duties, neither the medical reports nor the medical testimony contain any information as to the methods, frequency or repetitiveness with which claimant performed various tasks or lifted heavy items in the warehouse. Likewise, they did not indicate a correlation or mechanism by which claimant's specific work activities caused his conditions. The treating orthopedist testified that it was "possible" that claimant's condition and the MRI results were due [*3]to repetitive stress or overuse, or both. However, given how many body parts were in issue, which he opined was a "very unusual presentation," he further testified that there could be other medical reasons for claimant's conditions such as rheumatoid arthritis, lupus, fibromyalgia or Lyme disease, which had not yet been ruled out through diagnostic testing. Although the orthopedist concluded that it was "reasonable" to attribute claimant's neck, back and wrist/hand conditions to overuse, his understanding of claimant's job duties was limited to "working at a warehouse" which required bending, pulling, twisting and pushing. He was apparently unaware of the January incident that claimant alleged triggered his pain, and he did not tie claimant's conditions to specific job tasks or activities.
Claimant's physiatrist likewise had limited knowledge of claimant's specific job tasks other than that he was required to "move around a lot, filing documents[ ] and lifting heavy objects" and he demonstrated no knowledge about the alleged January 2021 precipitating incident. He conceded that, although claimant's symptoms were consistent with overuse and repetitive tasks — an opinion that he based upon claimant's "history" and "lack of evidence [to] the contrary" — he agreed that they could also be attributable to a connective tissue or other medical disorder or to degenerative changes, all of which needed to be ruled out. Given the medical providers' limited understanding of claimant's specific job duties, "except in the most generalized sense," such that they did not, indeed could not, "demonstrate a recognizable link between his . . . condition[s] and a distinctive feature of his . . . employment" (Matter of Sanchez v New York City Tr. Auth., 213 AD3d at 1132, 1133 [internal quotation marks and citations omitted]), the Board's rejection of claimant's medical proof as insufficient and its finding that he failed to submit sufficient, credible medical evidence to establish a recognizable link between his specific, repetitive job duties and his conditions is supported by substantial evidence and will not be disturbed (see id. at 1133; Matter of Bonet v New York City Tr. Auth., 205 AD3d 1287, 1289 [3d Dept 2022]; Matter of Seymour v American Stock Transfer & Trust Co., 205 AD3d at 1273; Matter of Patalan v PAL Envtl., 202 AD3d at 1253).
Egan Jr., Fisher, McShan and Powers, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: The WCLJ had previously found prima facie medical evidence only as to the neck, back and hands/wrist but not as to the knees or hips. After the hearing, the WCLJ also found prima facie medical evidence as to claimant's shoulders, knees and hips.